OPINION *Page 2 
{¶ 1} This matter is on appeal from the trial court's denial of appellant's motion to suppress a field sobriety test in a driving under the influence case.
 STATEMENT OF FACTS AND CASE {¶ 2} On April 6, 2006, appellant was cited and summoned for a marked lane violation pursuant to R.C. 4511.33 and a driving under the influence of alcohol violation pursuant to R.C. 4511.19(A)(1)(a) and4511.19(A)(2) in the County Court of Perry County, Ohio.
 {¶ 3} On June 8, 2006, appellant filed a motion to suppress. In the motion appellant argued as follows: the investigating officer lacked reasonable suspicion to make a valid traffic stop; the investigating officer lacked reasonable suspicion to conduct a field sobriety test; and the investigating officer failed to perform the horizontal gaze nystagmus (HGN) test in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards.
 {¶ 4} On July 27, 2006, the trial court held a hearing on appellant's motion to suppress. Trooper Brian Spackey from the Ohio State Highway Patrol, Department of Public Safety, testified on behalf of the State. During his testimony, Trooper Spackey stated that he successfully completed training in DUI detection and enforcement and had investigated approximately 130 DUI incidents since his graduation from the Highway Patrol Academy in November of 2004.
 {¶ 5} He further testified that on April 6, 2006, at approximately 8:24 P.M. he was traveling southbound in a marked cruiser on State Route 13. He stated that State Route 13 is a two lane road with a wide berm and that the road is heavily traveled in the *Page 3 
evening. He testified that he observed a northbound vehicle traveling over the white edge line. T.4. The Trooper stated that he turned around and followed the vehicle for approximately two minutes. He stated that during that time he observed the vehicle cross the white edge line again and eventually saw the vehicle straddle the white edge line, "nearly running off the road for approximately 50-60 feet". T.4. That's when the trooper decided to stop the vehicle for a marked lane violation.
 {¶ 6} The trooper testified that he activated his lights and pulled the vehicle over to the side of the road. The trooper stated that, after approaching the vehicle, he observed the appellant to be the driver of the vehicle. He also stated that appellant's husband was in the front passenger seat and appeared to be intoxicated.
 {¶ 7} The officer testified that during the initial contact after the stop, the appellant was able to provide him with identification but appeared to be confused, sluggish and held her head down and mumbled. The officer testified that he detected an odor of alcohol and asked the appellant to exit the vehicle. The officer testified that, upon further conversation with the appellant, he could smell that the appellant's breath had a strong odor of alcohol. The officer testified that the appellant was slow getting out of the vehicle and kept her hands on the car for balance. The officer testified that appellant stated that she had had a "few" drinks. He further testified that "her eyes were red and glassy" and "her face seemed a little flush." T.7. He also testified that the appellant was unstable on her feet and kept swaying back and forth. He testified, "that's one of the reasons I immediately took her back to the backseat of the patrol car." T.7.
 {¶ 8} It was at this point that he concluded that she was too impaired to be operating a vehicle and asked her to perform some field sobriety tests. T.9. Specifically *Page 4 
the officer testified that he first asked the appellant to perform the horizontal gaze nystagmus (HGN) test.
 {¶ 9} The officer testified that the HGN test comes from the NHTSA. He stated that he was trained in administering the test in August of 2004 at the Highway Patrol Academy. He further testified regarding the procedure for administration of the test.[1]
 {¶ 10} He testified that during the test she was seated in the back seat of the patrol car with her feet on the ground. The officer stood outside the vehicle. He testified that you can administer the test to a driver who is either standing up or seated. He testified that he preferred to have the subject seated because he is better able to control the safety of the situation and, because he is not a tall person, and in this stance he can get slightly above the subject's eye level without standing on his toes.T.11.
 {¶ 11} The officer testified that he performed several tests including the equal tracking and equal pupil size test, the lack of smooth pursuit test, the maximum deviation test and the on set prior to 45 degrees test. The trooper testified that during the testing he used his flashlight and held the stimulus approximately 12-15 inches away from the appellant's face and slightly above the appellant's eye level. T.29. The trooper testified that the equal tracking test is performed to determine whether the person has a medical condition with their eyes. The trooper testified that during the *Page 5 
testing he asked the appellant if she understood what he was asking her to do and she responded that she did. T. 15-16. The trooper testified as follows in regard to the results: appellant's eyes were the same size and tracked together; appellant's eyes did not track smoothly, there was a "lack of smooth pursuit"; there was a distinct nystagmus on each of the appellant's eyes; and the appellant displayed an involuntary jerking of the eye prior to reaching the 45 degree angle. The officer testified that during the HGN testing the appellant exhibited a total of six clues. The officer further testified that "[b]ased upon the National Highway Traffic Safety Administration Manual, anyone who exhibits four or more clues on horizontal gaze nystagmus, there is a 77% chance that their BAC level is .10 or higher. T.15.
 {¶ 12} The officer testified that he then asked the appellant to perform the walk and turn test, at which point the appellant advised him that she had arthritis in her knees. T.16. The officer testified, "at that point, I decided not to perform any more field sobriety tests, just for the fact that she was very unstable on her feet" and the area was dangerous due to the traffic. The officer testified that, "based on the totality of the clues", the appellant was then placed under arrest for operating a vehicle under the influence.
 {¶ 13} On September 1, 2006, by judgment entry the trial court denied appellant's motion to suppress holding in pertinent part as follows:
 {¶ 14} "With regard to the issues addressed at the hearing, the Court would find that Trooper Spackey observed the Defendant traveling southbound on State Route 13 and crossed over the edge line straddling said edge line for one to two minutes, thus was the citation for the marked lanes violation. *Page 6 
 {¶ 15} "Upon the trooper stopping the vehicle, the Defendant seemed confused, sluggish and furthermore had a strong odor of alcohol while positioned in the vehicle. Therefore the officer removed the Defendant from the vehicle and ascertained that the strong odor of alcohol was emanating from the Defendant herself. When she removed herself from the vehicle she moved very slowly from the vehicle putting her hands on the vehicle to assist her in balance and stated that she had been drinking. The Defendant appeared very unstable on her feet and had a flush complexion and the officer at that point believed the Defendant was too impaired to operate a motor vehicle.
 {¶ 16} "The officer asked her to perform field sobriety tests. The Court finds that there was a reasonable suspicion to stop the vehicle and that the horizontal nystagmus tests were conducted in the National Highway Traffic and Safety Association Standards.
 {¶ 17} "Further the Court finds that there was probable cause based upon the totality of the circumstances for the officer to issue the citation and therefore denies the Defendant's Motions. * * *"
 {¶ 18} On October 24, 2006, appellant appeared and pleaded no contest to the charge of driving under the influence in violation of R.C. 4511.19(A)(1)(a) and the trial court found appellant guilty of the charge. The court further dismissed the marked lanes violation and the charge of driving under the influence in violation of 4511.19(A)(2). Appellant's conviction and sentence and the dismissal of the other two charges were journalized on January 4, 2007. It is from the trial court's denial of appellant's motion to suppress that appellant now seeks to appeal setting forth the following assignment of error: *Page 7 
 {¶ 19} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 20} In this assignment of error, appellant makes several related arguments. First, appellant argues that the trial court erred in finding that the trooper had a reasonable articulable suspicion to perform an HGN test. Second, appellant argues that the State failed to establish that the HGN test was administered by the trooper in substantial and/or strict compliance with NHTSA standards.[2] Finally, appellant argues that the Trooper lacked probable cause to place the appellant under arrest for driving under the influence. We disagree.
 {¶ 21} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an *Page 8 
appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96, 641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906; and Guysinger, supra.
 {¶ 22} It is well-established that an officer may not request a motorist to perform field sobriety tests unless that request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. State v. Evans (1998),127 Ohio App.3d 56, 62, 711 N.E.2d 761, citing State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported. Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause."State v. Shepherd (1997), 122 Ohio App.3d 358, 364, 701 N.E.2d 778. "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." Village of Kirtland Hills v. Strogin, Lake App. No. 2005-L-073,2006-Ohio-1450, at paragraph1 3, citing, Village of Waite Hill v.Popovich, Lake App. No. 2001-L-227, 2003-Ohio-1587, at paragraph 14.
 {¶ 23} "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. State v. Wells, Montgomery App. No. 20798,2005-Ohio-5008; State v. Cooper, Clark App. No. 2001-CA-86, 2002-Ohio-2778; State v. Robinson, Greene App. No. 2001-CA-118, 2002-Ohio-2933; State v. Mapes, Lake App. No. F-04-031, 2005-Ohio-3359
(odor of alcohol, *Page 9 
`slurred speech' and glassy and bloodshot eyes); Village of KirtlandHills v. Strogin, supra; State v. Beeley, Lucas App. No. L-05-1386,2006-Ohio-4799, paragraph 16, New London v. Gregg, Huron App. No. H-06-030, 2007-Ohio-4611.
 {¶ 24} Appellant argues that pursuant to the holdings in State v.Spillers (Mar. 24, 2000), Darke App. No. 1504, unreported, and State v.Dixon (Dec. 1, 2000), Greene App. No. 200-CA-30, unreported, there was insufficient evidence in this case for conducting field sobriety tests. In Spillers and Dixon, the courts determined that a de minimus traffic violation, slight odor of alcohol and admission to having consumed a couple drinks was insufficient to justify the performance of field sobriety tests. The court in State v. Knox, Greene App. No. 2005-CA-74,2006-Ohio-3039 talked about Spillers and Dixon:
 {¶ 25} "In Spillers the officer was relying only on de minimus traffic violations, a `slight' odor of alcohol, and the admission of alcohol consumption to justify the administration of field sobriety tests. We stated there that `[a] slight odor of alcoholic beverage is insufficient, by itself, to trigger a reasonable suspicion of DUI, andnominal traffic violations, being common to virtually every driver, add nothing of significance. Accordingly, we conclude that the trial court did not err in finding that the detention of Spillers for the purpose of administering a field sobriety test was unlawful.' Spillers, supra. (emphasis in the original).
 {¶ 26} "Similarly, in Dixon the officer stopped a car with darkly tinted windows and noticed that the driver had glassy, bloodshot eyes, a slight odor of alcohol, and the admission of alcohol consumption. Because tinted windows do not indicate impairment, *Page 10 
the officer was attempting to rely only on the condition of the eyes, the slight odor of alcohol, and the admitted consumption of alcohol to justify the field sobriety tests."
 {¶ 27} However, this case is distinguishable from Spillers andDixon. In this case appellant was initially stopped for pulling over the white edge line and nearly running off the road for 50-60 feet. Thereafter, Trooper Spackey testified that when he approached the vehicle he detected a slight odor of alcohol and appellant admitted that she had been drinking. However, the Trooper also testified that he observed that the appellant's eyes were red and glassy and that the appellant appeared to be confused, sluggish and mumbling. He stated that after he asked the appellant to exit the vehicle he smelled a strong odor of alcohol on her breath. He also observed the appellant having trouble getting out of the vehicle, swaying back and forth and holding onto the vehicle for balance. Based upon the totality of circumstances, we believe Trooper Spackey had sufficient indicia of intoxication to establish a reasonable suspicion to request appellant to submit to field sobriety testing. See State v. Howard, Green App. No. 2007CA42,2008-Ohio-2241. (Speeding in conjunction with a strong odor of alcohol when appellant exited the vehicle was sufficient justification to conduct a field sobriety test.)
 {¶ 28} In order for the results of the field sobriety tests to be admissible, the state must show by clear and convincing evidence that the officer performing the testing substantially complied with accepted testing standards. State v. Jimenez, Warren App. No. CA2006-01-005, 2007-Ohio-1658 citing State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37,801 N.E.2d 446; R.C. 4511.19(D)(4)(b).[3] Typically, the standards used are *Page 11 
those from the NHTSA. Id. at paragraph 12. Part of the state's burden "includes demonstrating what the NHTSA requirements are, through competent testimony and/or by introducing the applicable portions of the NHTSA manual." State v. Djisheff, Trumbull App. No. 2005-T-0001,2006-Ohio-6201 citing State v. Brown, 166 Ohio App.3d 638,2006-Ohio-1172, 852 N.E.2d 1228; State v. Ryan, Licking App. No. 02-CA-00095, 2003-Ohio-2803. In State v. Boczar, the Supreme Court held that HGN test results are admissible in Ohio without expert testimony, so long as substantial compliance with testing guidelines has been shown and a proper foundation has been established as to the administering officer's training, the officer's ability to administer the test and the officer's technique in administering the test. State v. Boczar,113 Ohio St.3d 148, 153, 2007-Ohio-1251, 863 N.E.2d 155.
 {¶ 29} In this case, Trooper Spackey testified that he performed the HGN testing procedures as set forth by NHTSA. He further testified that he had attended the Highway Patrol Academy and had been trained in administering field sobriety tests, including the administration of the HGN to subjects in both a standing and a seated position. He stated that he had been involved in approximately 130 DUI investigations since his graduation from the academy. He further testified regarding the specific standardized requirements of the NHTSA guidelines for HGN testing. *Page 12 
 {¶ 30} Finally, his testimony, regarding the procedures employed during the appellant's HGN test, showed that the testing procedures the trooper used were substantially similar, if not identical, to the standardized requirements set forth by the NHTSA. He testified that he could not recall if the appellant was wearing glasses or contacts but that hard contacts would have no effect on the test results. He stated that he advised the appellant regarding the procedures and she indicated that she understood his instructions.
 {¶ 31} He stated that he first performed the equal tracking and equal pupil size test and performed the procedures twice on each eye. He stated that this procedure is performed to detect any medical conditions, and that appellant displayed equal tracking and equal pupil size during the procedure.
 {¶ 32} He testified that he then performed the smooth pursuit test twice for each eye and that the appellant's eyes did not track smoothly. He testified that he performed the maximum deviation test taking the appellant's eye to a position at the farthest point for a minimum of four and a maximum of thirty seconds thereby examining the nystagmus' distinction.
 {¶ 33} Finally, he testified that he performed the on-set prior to 45 degree test by pointing the stimulus at the appellant's nose, working it out to a forty five degree angle and looking for any jerking of the eye. He stated that he performed this test twice in each eye and detected clues in both eyes.
 {¶ 34} On cross-examination, the Trooper reiterated these procedures, testified to compliance within seconds of the required time periods, and admitted that he had not been trained in all the various types of sobriety testing procedures. *Page 13 
 {¶ 35} Based on the Trooper's testimony regarding NHTSA guidelines and his testimony regarding the testing of the appellant, we find that there was substantial compliance with the NHTSA guidelines. We further find that cross-examination by appellant's counsel does not affect this conclusion.
 {¶ 36} Finally, appellant argues that the trial court erred in determining that the Trooper had probable cause to arrest appellant for DUI. Initially, we note that probable cause for an arrest does not necessarily have to be based, in whole or in part, on a suspect's poor performance on one or more standardized testing procedures. State v.Homan, 89 Ohio St. 3d 421, 427, 732 N.E.2d 952. The standard for determining whether the police have probable cause to arrest an individual for DUI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan,89 Ohio St. 3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952, citing, Beck v. Ohio (1964),379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; State v. Timson (1974), 38 Ohio St.2d 122, 127, 311 N.E.2d 16; State v. Gangloff, Hamilton App. Nos. C-060481, C-060536, 2007-Ohio-4463.
 {¶ 37} To the extent that the State seeks to use the results of a field sobriety test as a basis for probable cause to arrest, the police must have administered the test in substantial compliance with standardized testing procedures. Strongsville v. Troutman, 8th Dist. No. 88218, 2007-Ohio-1310 at ¶ 22 citing R.C. 4511.19; State v. Schmitt
(2004), 101 Ohio St.3d 79, 82, 801 N.E.2d 446.[4] However, the totality of the *Page 14 
circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered. State v. Homan89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952., See also, State v.Miller (1997), 117 Ohio App. 3d 750, 761, 691 N.E.2d 703; State v.Bradenburg (1987), 41 Ohio App. 3d 109, 534 N.E.2d 906.
 {¶ 38} As we have previously determined, based on the evidence presented, the Trooper substantially complied with the NHTSA guidelines for the administration of the HGN test, which appellant, in fact, failed. In addition, the Trooper initially observed the appellant driving across the white edge line and straddling the line for approximately 50 to 60 feet. He also observed the appellant's red glassy eyes, sluggish movements, flushed complexion and inability to stand without swaying or holding onto the vehicle. He also testified that the appellant's breath had a strong odor of alcohol and she admitted to drinking. Based on the Trooper's testimony we find that the totality of facts and circumstances supported a finding of probable cause to arrest the appellant for driving under the influence of alcohol. We further find that probable cause was established even in the absence or exclusion of the field sobriety test.
 {¶ 39} For these reasons we hereby find that the trial court did not err in overruling appellant's motion to suppress. *Page 15 
 {¶ 40} Accordingly, appellant's assignment of error is not well taken and is hereby overruled.
 {¶ 41} The judgment of the Perry County Court of Common Pleas is hereby affirmed.
 Edwards, J., Hoffman, P.J. and Wise, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The trooper testified as follows in regard to the procedure: Initially, you advise the person that you want them to follow the tip of your pen without moving their head. You place the pen approximately 12-15 inches slightly above their eye level. "[F]irst you're checking for equal tracking and equal pupil size, which is performed basically the same way as lack of smooth pursuit. It should take approximately two seconds to take the eye all the way to the farthest point and two seconds back to the nose. We start with the left eye. We do two passes on that. Then lack of smooth pursuit again. When you're doing equal tracking, equal pupil size you make sure the eyes are tracking together and the pupils aren't one's-you know-a lot smaller or larger than the other one. Then the smooth pursuit you are just seeing if the eyes are following the pen smoothly. * * * Someone who's impaired by alcohol or certain drugs, their eyes will bounce as it follows the pen. And then-on-maximum deviation, take the eyes to the farthest point and hold it out for a minimum of four seconds. Check both eyes twice again, get an on-set prior to 45 degrees, basically you are checking for an involuntary jerking of the eyes prior to reaching a 45 degree angle, which is usually the suspects shoulder, is where you go out."
[2] Appellant sets forth this argument in two parts as follows: (1) "The State failed to satisfy its burden that the HGN test was administered in substantial/strict compliance with NHTSA standards"; and, (2) "Even if the State did satisfy its initial burden of showing the HGN test was conducted in substantial compliance, the defendant met her burden of impeaching Trooper Spackey and the results of the tests should have been suppressed.
[3] "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply: (i) The officer may testify concerning the results of the field sobriety test so administered. (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding. (iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." (Effective April 9, 2003).
[4] State v. Schmitt recognized that the General Assembly amended R.C. 4511.19 (see Am. Sub. S.B. No. 163), so that an arresting officer no longer must have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Rather, the officer may now testify regarding the results of a field sobriety test administered in substantial compliance with testing standards. See State v. Haneberg, 9th Dist. No. 06CA0048-M,2007-Ohio-2561 at ¶ 7. (Emphasis added). *Page 1