[Cite as *State v. Garber*, 2011-Ohio-5459.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| v. | |
| | Case No. 2011 CA 0004 |
| BRIAN GARBER | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Municipal Court,
                             Case No.  2009 TRC 5900


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      October 21, 2011


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant


                                      PAUL MANCINO, JR.
PROSECUTING ATTORNEY                  75 Public Square, Suite 1016
60 East High Street                   Cleveland, Ohio  44113-2098
Mt. Gilead, Ohio  43338
                                      JACEDA BLAZEFF
                                      480 Park Avenue West
                                      Mansfield, Ohio  44906

*Wise, J.*

**{¶1}** Defendant-Appellant Brian M. Garber appeals the October 26, 2010, Judgment Entry of the Morrow County Municipal Court overruling his motion to suppress.

**{¶2}** Plaintiff-Appellee State of Ohio did not file a brief in this matter.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** On December 12, 2009, State Highway Patrol Officer Morris Johnson was working the 11:00 p.m. to 7:00 a.m. shift on Interstate 71. At or about 3:00 a.m. he observed a vehicle that "appeared to be traveling over the posted speed limit." (T. at 20). After the vehicle passed the location where the Trooper was parked he turned around at the nearest crossover and pursued the vehicle northbound. Trooper Johnson stated that he observed the vehicle drift over the right of the fog line, and he proceeded to stop Appellant's vehicle. (T. at 21-22).

**{¶4}** Trooper Johnson testified that while he was talking to Appellant, he noticed that his eyes were red and glassy, his speech was slurred and his body motions were slow. (T. at 22). He further observed a moderate odor of alcohol coming from Appellant's breath as he spoke. (T. at 22).

**{¶5}** Based on these observations, Trooper Johnson stated that he thought Appellant "might have been impaired" and that he asked Appellant to perform field sobriety tests which included the one-legged stand, the walk and turn and also the horizontal gaze nystagmus test. (HGN). (T. at 24).

**{¶6}** Appellant scored six clues on the HGN test. (T. at 29-34). On the one-leg-stand test, Appellant swayed, raised his arms for balance, hopped and failed to look

at his raised foot as instructed. (T. at 34-37). During the walk and turn test, Appellant failed to touch heel to toe on a couple of steps, raised his arm approximately six inches for balance, stepped off the line while walking and turned in the wrong direction. (T. at 38-40)

{¶7} Based on his observation and Appellant's performance on the tests, Trooper Johnson arrested Appellant and transported him to the Morrow County jail where he submitted to a breathalyzer test which indicated Appellant had a BAC of .118.

{¶8} Appellant was charged with OVI, in violation of R.C. §4511.19(A)(1)(a) and (A)(1)(d) and with Speeding, in violation of R.C. §4511.21(D)(2).

{¶9} On June 7, 2010, following a number of trial continuances, Appellant filed a Motion to Suppress.

{¶10} On August 9, 2010, the trial court held a hearing on Appellant's motion.

{¶11} At the hearing, the trial court heard testimony from Trooper Johnson.

{¶12} On October 26, 2010, the trial court filed a detailed eleven-page Judgment Entry denying Appellant's motion to suppress.

{¶13} On January 18, 2011, Appellant entered a plea of no contest.

{¶14} By Judgment Entry filed January 18, 2011, the trial court sentenced Appellant to 60 days in jail and a $1,000 fine, with 57 days and $600 suspended upon certain conditions.

{¶15} Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶16} "I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT RULE [SIC] THAT DEFENDANT WAS STOPPED BASED UPON A REASONABLE AND ARTICULABLE SUSPICION.

{¶17} "II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS CONSENT WAS NOT OBTAINED PRIOR TO DOING ANY FIELD SOBRIETY TEST.

{¶18} "III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED THE MOTION TO SUPPRESS."

I.

{¶19} Appellant, in his first assignment of error, claims that the trial court erred in finding reasonable, articulable suspicion for the traffic stop.  We disagree.

{¶20} Appellant argues that his stop and detention was unlawful and that such constituted a "seizure" within the meaning of the Fourth Amendment

{¶21} In *Whren v. United States* (1996), 517 U.S. 806, the United States Supreme Court held:

{¶22} "The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective." *Whren* at 1771. Less than one month later, the Ohio Supreme Court reached a similar decision in *City of Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. In *Erickson,* the Court stated:

{¶23} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the

Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Id.* at syllabus. However, the Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538 at ¶ 23.

{¶24} Based on the above, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. In fact, the Ohio Supreme Court stated that " * * * we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid *regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.*" (Emphasis added.) *City of Dayton v. Erickson,* supra at 11–12, 665 N.E.2d 1091. See, also, *State v. Rice,* Fifth Dist. No. 2005CA00242, 2006–Ohio–3703 at ¶ 33–34; *State v. Rice* (Dec. 23, 1999), 5th Dist. No. 99CA48. If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Mays,* supra at ¶ 8.

{¶25} In *Mays,* supra, the defendant argued that his actions in that case - twice driving across the white edge line - were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. *Id.* at ¶ 15. Appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed

to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Id.* at ¶ 17.

**{¶26}** In the case at bar, Trooper Johnson first made a visual estimate of the speed of appellant's vehicle. He then substantiated that the vehicle was in fact traveling at 82 miles per hour, a speed greater than the posted speed limit by use of the Python radar unit.

**{¶27}** The judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. See *State v. Burnside* (2003), 100 Ohio St.3d 152, 154–55, 797 N.E.2d 71, 74. The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. The officer's testimony represents competent, credible evidence that Appellant was speeding. Therefore, the factual finding of the trial court that Appellant was exceeding the speed limit is clearly not erroneous.

**{¶28}** Reviewing courts should accord deference to the trial court's decision concerning the credibility of the witnesses because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that

cannot be conveyed to us through the written record, *Miller v. Miller* (1988), 37 Ohio St.3d 71. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See also *State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

**{¶29}** We accept the trial court's conclusion that Appellant's violation of the traffic laws gave Trooper Johnson reasonable suspicion to stop Appellant's vehicle because the factual findings made by the trial court are supported by competent and credible evidence. Thus, the trial court did not err when it denied Appellant's motion to suppress on the basis that the initial stop of his vehicle was valid.

**{¶30}** Appellant's first assignment of error is overruled.

II.

**{¶31}** In his second assignment of error, Appellant argues that he was denied due process because his consent was not obtained prior to his performing the field sobriety tests. We disagree.

**{¶32}** It has been held that a person has been seized for purposes of the Fourth Amendment when an officer conducts an investigative stop and detains the person in order to administer field sobriety tests. *State v. Robinette,* 80 Ohio St.3d 234, 241, 1997-Ohio-343; *State v. Cominsky,* 11th Dist. No.2001-L-023, 2001-Ohio-8734, appeal not allowed (2002), 95 Ohio St.3d 1421; *State v. Litteral* (June 14, 1994), 4th Dist. No.

93CA510 (determining roadside sobriety tests are a "search" within the meaning of the Fourth Amendment).

{¶33} A warrantless search or seizure is presumptively unreasonable unless it falls within one of the established exceptions to the warrant requirement. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514.

{¶34} One exception permits police to conduct warrantless searches with the voluntary consent of the individual. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 222, 93 S.Ct. 2041, 2045 (stating "a search conducted pursuant to a valid consent is constitutionally permissible").

{¶35} Another exception allows a police officer to stop and detain an individual without a warrant when the officer has a reasonable suspicion based upon specific, articulable facts that criminal activity has just occurred or is about to take place. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868.

{¶36} After making a valid investigatory stop, an officer who has reasonable and articulable suspicion that a driver is intoxicated may conduct field sobriety tests. *State v. Perkins,* 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 8; *State v. George,* 5th Dist. No. 07-CA-2, 2008-Ohio-2773, ¶ 22.

{¶37} Even if we assume for purposes of our analysis, without so deciding, that a field sobriety test is a "search" within the meaning of the Fourth Amendment, Trooper Johnson had reasonable and articulable suspicion that Appellant was under the influence of alcohol based on his observations that Appellant's eyes were glassy and bloodshot, his speech was slurred, and there was a moderate odor of alcohol.

{¶38} Based on the uncontradicted testimony of Trooper Johnson, we find the above observations to be sufficient to administer the field sobriety tests.

{¶39} Appellant's second assignment of error is overruled.

III.

{¶40} In his third assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress. We disagree.

{¶41} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 485; *State v. Guysinger* (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623; *Guysinger*. As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 116 S.Ct. 1657, 1663, "…as a

general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶42}** In *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, the Supreme Court of Ohio held that in order for the field sobriety tests to serve as evidence of probable cause to arrest, such tests must be performed in strict compliance with the procedures promulgated by the NHTSA.

**{¶43}** However, R.C. § 4511.19(D)(4)(b), effective April 9, 2003, provides in pertinent part:

**{¶44}** "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the whole blood, blood serum or plasma, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

**{¶45}** "(i) The officer may testify concerning the results of the field sobriety test so administered.

**{¶46}** "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.

**{¶47}** "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."

**{¶48}** The Supreme Court of Ohio recognized that under this amended version of R.C. §4511.19(D)(4)(b), "the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial." *State v. Schmitt,* 101 Ohio St.3d 79, 801 N.E.2d 446, 2004-Ohio-37, at ¶ 9. Rather, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards. *Id.* Additionally, "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar,* 113 Ohio St.3d 148, 863 N.E.2d 155, 2007-Ohio-1251, at ¶ 27.

**{¶49}** This Court has previously held that field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were

administered. *Homan,* supra. Further, the Ohio Supreme Court has made clear that the officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." *State v. Schmitt* (2004), 101 Ohio St.3d 79, 84, 2004-Ohio-37 at ¶ 15, 801 N.E.2d 446, 450.

{¶50} Appellant herein argues that Trooper Johnson failed to substantially comply with the Ohio Administrative Code 3701-53-01 in administering the breathalyzer test and the field sobriety tests.

{¶51} With regard to the breathalyzer test, Appellant argues that Trooper Johnson did not have sufficient knowledge as to whether the OAC requires that the DataMaster breathalyzer machine be tested both before and after use.

{¶52} Upon review of Trooper Johnson's testimony, we find that when posed with the question as to whether the Data Master machine's instrument check procedure was different than the Intoxilyzer 8000 machine, Trooper Johnson responded by saying "[a]ctually I think the DataMaster does do an instrument check before and after." When questioned further as to same, he stated "I think it does. I'm not 100 percent sure though." (T. at 72).

{¶53} Further, Trooper Johnson testified that there were no problems with the machine on the night in question and that his senior operator's certificate was up-to-date. (T. at 43-44).

{¶54} Based on the foregoing, and absent any showing of prejudice on the part of Appellant, we find that Trooper Johnson substantially complied with the ODH regulations in administering the breathalyzer test in this case.

**{¶55}** Appellant also argues that the HGN test was not administered properly. Appellant argues that the test was administered to Appellant while he was seated but that Trooper Johnson had been trained to perform the test while the subject was standing.

**{¶56}** Trooper Johnson testified, however, that the test can be administered sitting down or standing up and that having the subject do the test while seated is for the well being of the subject. (T. at 60-61).

**{¶57}** Based on Trooper Johnson's uncontradicted testimony, we find that he substantially complied in administering the HGN test. Further, Appellant has failed to show any prejudice with regard to having the test administered while seated.

**{¶58}** Appellant also argues that the one-leg stand and walk-and-turn tests were also administered improperly. With regard to these tests, Appellant argues that the trial court's finding that Trooper Johnson gave Appellant the "general instructions" required for such tests does not meet the "substantial compliance" standard.

**{¶59}** This Court has reviewed the trial court's findings, Trooper Johnson's testimony and the video recording of Appellant performing the field sobriety tests. The record demonstrates that in addition to Trooper Johnson relaying the proper verbal instructions for each test to Appellant, he also physically demonstrated each test.

**{¶60}** Based on the foregoing, we find substantial compliance with Ohio Department of Health regulations.

**{¶61}** Appellant's third assignment of error is overruled.

**{¶62}** Based on the foregoing, we find that the trial court did not abuse its discretion in overruling Appellant's motion to suppress.

{¶63} Appellant's assignments of error are overruled.

{¶64} For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Morrow County , Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and Farmer, J., concur.

_____

_____

_____

JUDGES

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
|    Plaintiff-Appellee | : | |
| | : | |
| v. | : | JUDGMENT ENTRY |
| | : | |
| BRIAN GARBER | : | |
| | : | |
|    Defendant-Appellant | : | Case No. 2011 CA 0004 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court, Morrow County, Ohio, is affirmed.

Costs assessed to Appellant.

_____

_____

_____

JUDGES