OPINION
{¶ 1} Appellant, Village of Kirtland Hills, appeals from the May 3, 2005 judgment entry of the Willoughby Municipal Court granting the motion to suppress of appellee, Joseph G. Strogin.
 {¶ 2} On January 7, 2005, Officer Sean Parker ("Officer Parker") of the Village of Kirtland Hills Police Department issued three citations to appellee pursuant to violations of Kirtland Hills Ordinances ("KHO"): one for operating a vehicle under the influence of alcohol or drug abuse ("OVI"), a violation of KHO 333.01(A)(1), a misdemeanor of the first degree; two for operating a vehicle with a prohibited concentration of breath alcohol, a violation of KHO 333.01(A)(4), a misdemeanor of the first degree; and three for operating a vehicle without illumination of the rear license plate, a violation of KHO 337.04(b), a minor misdemeanor. Subsequent to his arrest, Officer Parker placed appellee under administrative license suspension ("ALS") pursuant to R.C. 4511.191. At his initial appearance on January 12, 2005, appellee entered a plea of not guilty to all charges and appealed his ALS. The trial court granted a stay of his ALS, pending appeal.
 {¶ 3} On March 1, 2005, appellee filed a motion to suppress evidence, arguing that Officer Parker violated his constitutional rights when he initially stopped him, when he requested that he submit to field sobriety tests, and when he arrested him. On March 30, 2005, the trial court heard appellee's motion to suppress.
 {¶ 4} At the suppression hearing, Officer Parker testified for appellant. Officer Parker indicated that while on routine patrol on January 7, 2005, at 3:17 a.m., he was running stationary radar toward the eastbound lane at the one hundred and ninety-seven cross-over on I-90. He observed appellee's vehicle pass him without illumination on his rear license plate. He followed appellee for approximately one hundred yards before he pulled him over. He then informed appellee that he stopped him because of a license plate violation. At this point, Officer Parker noticed a "strong odor" of alcohol coming from the interior of the vehicle. Upon noticing the strong odor, Officer Parker testified that he asked appellee where they had been. Officer Parker stated that, "[t]hey said they were coming back from Denny's."[1] Officer Parker then went back to his cruiser to check appellee's identifying information and radioed his dispatcher, stating that he "was going to be out testing[.]" He then returned to appellee's car and asked him to step out of the vehicle.
 {¶ 5} After appellee was out of his vehicle, Officer Parker smelled a strong odor of alcohol emanating from appellee's person. He asked appellee where they had been. Appellee then admitted that they were coming from Slam Jams. Officer Parker then asked appellee how much he had to drink and appellee told him that he had a "couple beers." Upon this admission, Officer Parker testified that he asked appellee to recite the alphabet. When appellee did, Officer Parker indicated that he only made it to the letter "s" without making a mistake. Officer Parker then stated that appellee slurred and mumbled the rest of the alphabet, and he did not recite the remaining letters in the correct order. Further, Officer Parker said that he could not understand some of the letters.[2]
 {¶ 6} At that point, Officer Parker asked appellee if he would submit to field sobriety testing and appellee agreed. Officer Parker administered three National Highway Transportation and Safety Administration ("NHTSA") standardized tests to appellee: the horizontal gaze nystagmus test, the nine-step walk and turn test, and the one-leg stand test. He stated that appellee failed all three tests. Officer Parker also administered a non-standardized test to appellee; he had appellee touch his finger to his nose. Officer Parker stated that appellee also failed this test. Officer Parker then arrested appellee.[3]
 {¶ 7} On cross-examination, Officer Parker agreed that appellee's driving was not impaired in any way. Further, he stated that appellee's speech was fine when he initially pulled him over.
 {¶ 8} On May 3, 2005, the trial court granted appellee's motion to suppress. The trial court concluded that Officer Parker had justification to make the initial stop; however, it granted appellee's motion to suppress based upon its conclusion that Officer Parker did not have reasonable suspicion to request appellee to submit to field sobriety tests. Based upon this determination, the trial court did not get to the third issue, whether Officer Parker had probable cause to arrest appellee, concluding that the issue was moot. It is from the May 3, 2005 judgment that appellant appeals, raising the following sole assignment of error:
 {¶ 9} "The trial court erred to the prejudice of [appellant] in granting the motion to suppress filed by [appellee.]"
 {¶ 10} Appellant presents two issues for review under this assignment. The first issue presented is: "[a] police officer who is lawfully performing a routine traffic stop may, as a matter of course, order a driver from his vehicle without any suspicion of criminal activity and, regardless of his subjective intent in doing so, the information gathered by the officer subsequent to this request is properly considered in determining whether the officer had reasonable suspicion that the driver was operating a vehicle while under the influence to warrant a request that the driver perform roadside field sobriety tests." The second issue presented is: "[appellee] was requested to take field sobriety tests based upon the investigating officer's reasonable suspicion that he was operating his vehicle while under the influence." Because the issues are interrelated, we will address them as one.
 {¶ 11} At a suppression hearing, the trial court, acting in its role as the trier of fact, is in the best position to resolve questions of fact and evaluate the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594; State v. Frazier (Oct. 6, 2000), 11th Dist. No. 99-T-0109, 2000 Ohio App. LEXIS 4660, at 5. Then, an appellate court must independently review whether the trial court applied the correct legal standard. State v.Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 12} "The Fourth Amendment of the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantee[s] `the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' When a police officer stops an automobile and detains its occupants, a `seizure' is committed within the meaning of the Fourth andFourteenth Amendments of the United States Constitution." Statev. Wojtaszek, 11th Dist. No. 2002-L-016, 2003-Ohio-2105, at ¶ 15, citing Delaware v. Prouse (1979), 440 U.S. 648, paragraph two of the syllabus.
 {¶ 13} "It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law." State v. Boczar, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, at ¶ 11, citing Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11-12. Moreover, this court has repeatedly held that when a police officer witnesses a minor traffic violation, he or she is warranted in making a stop to issue a citation. Village of Waite Hill v. Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at ¶ 14. However, because any further detention is a greater invasion into an individual's liberty interests, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. State v. Evans (1998),127 Ohio App.3d 56, 62, citing State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361. A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. Popovich, supra, at ¶ 11; State v. Dye, 11th Dist. No. 2001-P-0140, 2002-Ohio-7158, at ¶ 18.
 {¶ 14} In Evans, supra, at 63, we noted a host of factors collected from various cases which may be considered by a court to determine whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:
 {¶ 15} "(1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,['] `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." Id. at fn. 2.
 {¶ 16} We point out that the foregoing factors are assistive guides in the determination of reasonable suspicion. Accordingly, no one factor is dispositive and, moreover, the list does not represent an exhaustive account of factors which can or should be considered. Boczar, supra, at ¶ 14. Generally, courts approve a request to submit to field sobriety testing only where the officer based his or her decision on a number of these factors.Evans, supra, at 63.
 {¶ 17} In the case sub judice, the trial court concluded, and we agree, that the initial traffic stop was justified due to Officer Parker lawfully pulling appellee over because his rear license plate was not illuminated. The trial court then found that "[appellee] had not admitted to alcohol consumption[,]" nor had he "exhibited any impaired driving[,]" at the point when Officer Parker had asked appellee to step out of his vehicle. Therefore, the trial court determined that Officer Parker was not justified in requesting appellee to submit to field sobriety tests because the only indicia that appellee might be under the influence was the fact that Officer Parker "observed the strong odor of alcohol." The trial court opined further that: "this one `additional specific and articulable fact' is not sufficient to established [sic] reasonable suspicion to investigate [appellee's] possible alcohol impairment[,]" and therefore, "the continued detention of [appellee], was not constitutionally justified."
 {¶ 18} Appellant argues that the trial court erred in limiting its analysis to factors that occurred prior to appellee getting out of his car. Appellant further asserts that if the trial court would have considered the additional factors observed by Officer Parker after appellee got out of his vehicle, then the indicia would have been sufficient to amount to reasonable suspicion of alcohol impairment, and as such, requesting appellee to submit to field sobriety tests would have been justified. We agree.
 {¶ 19} "`(* * *) Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating theFourth Amendment's proscription of unreasonable searches and seizures.'"Wojtaszek, supra, at ¶ 17, quoting Pennsylvania v. Mimms
(1977), 434 U.S. 106, 111. Further, it is "proper for an officer to order a driver to exit a lawfully stopped vehicle, even if there was no reasonable suspicion of criminal activity." Statev. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at 13. Thus, we conclude that Officer Parker did not violate appellee's Fourth Amendment rights by requesting that he get out of his vehicle, even if his subjective intent was to conduct field sobriety testing.
 {¶ 20} When looking at the totality of the circumstances, including the additional factors not considered by the trial court, Officer Parker had reasonable suspicion based upon articulable facts that appellee may be under the influence, enough to justify his request that appellee submit to field sobriety testing. It was 3:17 a.m. on a Friday night. Officer Parker smelled a strong odor of alcohol emanating from the car's interior when he first approached it. Further, when appellee got out of his vehicle, Officer Parker smelled a strong odor of alcohol on his person. Smelling the strong odor of alcohol on appellee, and prior to asking him to submit to standardized field sobriety tests, Officer Parker again asked him where they had been. At that point, appellee admitted that they were coming from Slam Jams, not Denny's. After admitting that they were coming from a bar, Officer Parker asked him how much he had to drink, and appellee admitted to having a couple of beers. Based upon this admission, Officer Parker requested that appellee recite the alphabet. Again, Officer Parker testified that appellee only made it to the letter "s" before slurring, mixing up, and mumbling the rest of the alphabet. Moreover, Officer Parker's dashboard video confirms that appellee did in fact only make it to the letter "s" before he slurred the remaining alphabet and mixed up the letters. It was only then that Officer Parker asked appellee to submit to the standardized field sobriety tests.
 {¶ 21} We note that these factors, without more, may not be enough to justify probable cause to arrest appellee for OVI. However, they are sufficient to establish reasonable suspicion to conduct field sobriety testing. Reasonable suspicion does not rise to the level of probable cause. Therefore, based upon all of these circumstances, we conclude that Officer Parker had sufficient indicia of intoxication to establish reasonable suspicion to request appellee to submit to field sobriety testing.
 {¶ 22} In sum, we agree with the trial court's conclusion that Officer Parker had probable cause to make the initial stop. However, appellant's assignment of error is well-taken since we conclude the trial court erred in finding that Officer Parker did not have reasonable suspicion to further investigate for alcohol impairment and conduct field sobriety tests.
 {¶ 23} As such, the judgment of the Willoughby Municipal Court is reversed and remanded for further proceedings. Upon remand, the Willoughby Municipal Court is instructed to address appellee's remaining issues that it rendered moot at the suppression hearing.
Cynthia Westcott Rice, J., concurs,
Colleen Mary O'Toole, J., concurs in judgment only.
[1] After reviewing Officer Parker's dashboard video, it is clear that he did not ask appellee where they had been. Officer Parker asked appellee where they were "headed." Appellee responded "home." Officer Parker then asked where home was and appellee told him where he lived and where his passenger lived. Officer Parker then walked around to the other side of the vehicle and asked the passenger why he did not have on his seat belt. The passenger replied that he had to go to the bathroom because they had just come from Denny's.
[2] Officer Parker's dashboard video confirms that appellee only made it to the letter "s" before he slurred the remaining letters of the alphabet and mixed up the letters.
[3] After he was arrested, appellee agreed to take a breathalyzer test. He blew a 0.131. However, at his suppression hearing, appellee stated that he was not going to argue the administration of the breathalyzer, or the results of the test.