[Cite as *State v. Patel*, 2013-Ohio-3300.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2012CA00190 |
| | : | |
| VIKRAMKUMAR PATEL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Canton Municipal Court
                              Case No. 2012 TRC 05341

JUDGMENT:                     AFFIRMED

DATE OF JUDGMENT ENTRY:       July 15, 2013

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JOSEPH MARTUCCIO                           JEFFRY V. SERRA
CANTON CITY LAW DIRECTOR                   THE FERRUCCIO LAW FIRM, L.P.A.
ANTHONY RICH                               220 Market Ave. S.
218 Cleveland Ave. SW                      400 Huntington Plaza
Canton, OH 44702                           Canton, OH 44702

*Delaney, J.*

{¶1} Appellant Vikramkumar Patel appeals from the October 1, 2012 judgment entry of the Canton Municipal Court overruling his motion to suppress. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose around midnight on October 20, 2012 when Ptl. Buzzard of the North Canton City Police Department observed appellant's vehicle at the intersection of South Main Street and Everhard Road S.W., Hoover Township, North Canton, Stark County. Buzzard noticed the license plate of the gray Pontiac Grand-Am had a blue date sticker on the license plate, indicating it expired in 2011. Buzzard checked the vehicle registration, verified the plate actually expired on January 1, 2012, and began to follow the vehicle.

{¶3} Buzzard initiated a traffic stop in a parking lot and made contact with the driver, appellant. He advised appellant of the reason for the stop and noticed the strong odor of alcohol emanating from appellant, who also had bloodshot eyes. Buzzard asked appellant whether he'd had anything to drink, and appellant replied that he'd gone to a party after work and had a few drinks. Buzzard told appellant he stopped him for an expired plate and appellant repeated several times that he had a "small license" or a "little license." Buzzard did not understand what appellant meant until he stepped back from the vehicle and noticed a (valid) temporary tag laying flat on the vehicle's back speaker ledge.

{¶4} Upon cross-examination, Buzzard acknowledged the vehicle would be in compliance if the temporary tag had been properly displayed in the license plate holder;

however, it was not.  Buzzard explained appellant displayed expired plates, and the temporary tag was not visible on the back ledge.

*Administration of SFSTs and Arrest*

{¶5}  Once backup arrived on the scene, Buzzard asked appellant to submit to standardized field sobriety tests (SFSTs).  On the horizontal gaze nystagmus (HGN) test, appellant exhibited three clues of impairment in each eye: lack of smooth pursuit, onset of nystagmus at 45 degrees, and clear and distinct nystagmus at maximum deviation.  On the walk-and-turn test, appellant exhibited a number of clues of impairment: he was unable to maintain the proper stance while listening to instructions, failed to touch heel to toe, raised his arm for balance, and stepped off the line while performing the test.  Finally, during the one-leg stand, appellant exhibited several clues of impairment: he failed to look at his toe, told Buzzard he'd be unable to count by thousands, and put his foot down, stopping the test and starting again.

{¶6}  Buzzard administered a portable breath test to verify whether the source of appellant's apparent impairment was alcohol.  The portable breath test result was ".115."  Buzzard arrested appellant for O.V.I.

{¶7}  After being placed under arrest, appellant stated he wanted to tell the truth and that he'd had more than three drinks that night.  Buzzard transported appellant to the North Canton Police Department where another officer administered a breath test on the department's Intoxilyzer 8000.  Appellant's breath test result was ".113."

*Certification of the Intoxilyzer 8000*

{¶8}  The North Canton Police Department's Intoxilyzer 8000, Instrument No. 80-004401, was certified by the Ohio Department of Health (O.D.H.) on July 10, 2011.

Appellant's breath test was performed on August 20, 2012. Intoxilyzer 8000 No. 80-004401 was certified again on August 28, 2012. Sgt. Mizner of the North Canton Police Department testified that certification by O.D.H. was to be performed once every calendar year; O.D.H. would usually certify the machine when personnel were present at the police department to do other tasks, such as re-certify officers. Sgt. Mizner asked O.D.H. personnel to clarify what was meant by certification within a "calendar year," and was told that certification anytime within the "federal calendar year" would suffice. In this case, therefore, the machine was certified in calendar year 2011 (July 10, 2011) and calendar year 2012 (August 28, 2012) and the fact that the certifications were over 13 months apart did not negatively affect the certifications.

*Suppression Motion and Plea of No Contest*

{¶9} The trial court overruled appellant's motion to suppress. Appellant entered pleas of no contest to one count of O.V.I. and one count of expired tag, and was sentenced to a jail term of 180 days with 177 suspended, with the remaining three days to be served in a Driver Intervention Program; 25 hours of community service; a 180-day suspension of his operator's license; and a fine and court costs.

{¶10} Appellant now appeals from the October 1, 2012 judgment entry of the trial court overruling his motion to suppress.

{¶11} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶12} "I. THE TRIAL COURT ERRED IN FINDING THAT OFFICER BUZZARD HAD A REASONABLE, ARTICULABLE SUSPICION OF A CRIMINAL ACTIVITY TO STOP THE APPELLANT'S VEHICLE WHEN THE APPELLANT'S VEHICLE WAS EQUIPPED WITH A VALID TEMPORARY LICENSE PLATE."

{¶13} "II. THE TRIAL COURT ERRED IN FINDING THAT OFFICER BUZZARD HAD A REASONABLE, ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY TO REQUEST THE APPELLANT TO EXIT HIS VEHICLE TO PERFORM FIELD SOBRIETY TESTS."

{¶14} "III. THE TRIAL COURT ERRED IN FINDING THAT OFFICER BUZZARD HAD PROBABLE CAUSE TO ARREST THE APPELLANT FOR OVI."

{¶15} "IV. THE TRIAL COURT ERRED IN ADMITTING THE APPELLANT'S BREATH TEST RESULTS OBTAINED FROM THE INTOXILYZER 8000, SERIAL #80-004401, AS THE MACHINE WAS NOT PROPERLY CERTIFIED ONCE EVERY CALENDAR YEAR IN ACCORDANCE WITH O.A.C. 3701-53-04(C)."

**ANALYSIS**

I., II., III.

{¶16} Appellant's first three assignments of error address whether the arresting officer had reasonable and articulable suspicion to stop appellant's vehicle and require him to perform standardized field sobriety tests, and whether probable cause existed for appellant's arrest for O.V.I., and will be addressed together.

{¶17} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332,

713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶18} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶19} In this case, appellant argues the trial court incorrectly determined the arresting officer did have reasonable and articulable suspicion to stop his vehicle and to require him to perform SFSTs, and incorrectly determined probable cause existed to arrest appellant for O.V.I. We agree with the trial court's conclusions for the following reasons.

*Reasonable and Articulable Suspicion to Stop Appellant's Vehicle*

{¶20} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶21} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they

unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct.744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

{¶22} Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura*,

5th Dist. No. 08 CA 95, 2009-Ohio-3339, ¶ 14, citing *State v. McCormick*, 5th Dist. No. 2000CA00204, 2001 WL 111891 (Feb. 2, 2001). Buzzard's observation of the expired tag supports his stop of appellant's vehicle. Appellant argues that "once Buzzard saw * * * a valid temporary license plate displayed in the rear window, there was no longer any reasonable, articulable suspicion of criminal activity * * *." This statement is contrary to Buzzard's testimony at the hearing, however. The temporary tag was not properly displayed in the rear window; it was laying on the ledge, out of the officer's view (T. 20-21). We find Buzzard properly stopped appellant for expired plates.

*Reasonable and Articulable Suspicion to Administer SFSTs*

{¶23} Upon making contact with appellant, Buzzard noticed the strong odor of an alcoholic beverage and appellant's bloodshot eyes. In response to Buzzard's inquiry, appellant admitted he had been drinking. Appellant argues the smell of alcohol alone is insufficient to give rise to reasonable, articulable suspicion to administer SFSTs. We note, however, Buzzard testified to the additional factors of bloodshot eyes and an admission of drinking.

{¶24} It is well-established that an officer may not request a motorist to perform field sobriety tests unless that request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761(11th Dist.1998), citing *State v. Yemma*, 11th Dist. No. 95-P-0156, unreported, 1996 WL 495076 (Aug. 9, 1996). Reasonable suspicion is " * * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist.1997). "A court will analyze the reasonableness of

the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Village of Kirtland Hills v. Strogin,* 11th Dist. No.2005-L-073, 2006-Ohio-1450, at ¶ 13, citing *Village of Waite Hill v. Popovich,* 11th Dist. No.2001-L-227, 2003-Ohio-1587, at ¶ 14.

{¶25} Generally, "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Wells,* 2nd Dist. No. 20798, 2005-Ohio-5008; *State v. Cooper,* 2nd Dist. No. 2001-CA-86, 2002-Ohio-2778; *State v. Robinson,* Greene App. No. 2001-CA-118, 2002-Ohio-2933; *State v. Mapes,* 6th Dist. No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin,* supra; *State v. Beeley,* 6th Dist. No. L-05-1386, 2006-Ohio-4799, paragraph 16, *New London v. Gregg,* 6th Dist. No. H-06-030, 2007-Ohio-4611. Those are exactly the factors established by appellee in this case, and we therefore find the officer had reasonable and articulable suspicion to administer the SFSTs.

{¶26} Appellant argues that pursuant to the holdings in *State v. Spillers*, 2nd Dist. No. 1504, unreported, 2000 WL 299550 (Mar. 24, 2000) and *State v. Stricklin*, 6th Dist. No. L-10-1277, 2012-Ohio-1877, there was insufficient indicia of impairment to conduct field sobriety tests. In both case*,* courts determined that a de minimis traffic violation, "slight" odor of alcohol and admission to having consumed a "couple" of drinks was insufficient to justify the performance of field sobriety tests. We find the present case to be distinguishable. We have already found Buzzard had a sufficient basis upon

which to stop appellant's vehicle, based upon the expired plates. We find that the totality of the circumstances beyond appellant's traffic violation gave Buzzard sufficient indicia of intoxication to establish a reasonable suspicion to request appellant to submit to field sobriety testing. *State v. Strope*, 5th Dist. No. 08 CA 50, 2009-Ohio-3849, ¶ 20.  Upon speaking to appellant, Buzzard noticed a "strong" odor of alcohol; appellant's eyes were bloodshot; and appellant admitted to having "a few" drinks. Based on the totality of the circumstances, we find Buzzard had sufficient indicia of intoxication to establish a reasonable suspicion to request appellant to submit to field sobriety testing.  Id.

{¶27} The trial court did not err in finding Buzzard had reasonable, articulable suspicion to administer SFSTs.

*Probable Cause to Arrest Appellant for OVI*

{¶28} In his third assignment of error, appellant argues Buzzard lacked probable cause to arrest him for O.V.I. under the totality of the circumstances because he did not slur his speech, he was cooperative and not belligerent, there is no indication of any erratic driving, and he was able to perform some aspects of the SFSTs.

{¶29} A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. *State v. Cummings,* 5th Dist.No.2005–CA–00295, 2006–Ohio–2431, ¶ 15, citing *State v. Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376 (1972). In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997); *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (2nd Dist.1987). A police officer does not have to

observe poor driving performance in order to effectuate an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See *State v. Harrop*, 5th Dist. No. CT2000–0026, unreported, 2001 WL 815538, (July 2, 2001), *2, citing *Atwell v. State*, 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist.1973).

{¶30} Both parties cite our decision in *State v. Shullo*, in which we referenced an eleven-part test of probable cause articulated by the Eleventh District. *State v. Shullo*, 5th Dist. No. 2010 CA 00261, 2011-Ohio-1619, ¶ 13, citing *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998).  In this case, appellee presented evidence of a number of factors from the *Shullo* case establishing probable cause to arrest, including a stop just after midnight, a strong odor of alcohol emanating from appellant along with bloodshot eyes, an admission of drinking, six clues on the HGN test, five clues on the walk-and-turn test, and three clues on the one-leg stand test.  We find Buzzard had probable cause to arrest appellant for O.V.I.

{¶31} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled.

IV.

{¶32} In his fourth assignment of error, appellant argues the trial court erred in admitting the results of the Intoxilyzer 8000, Instrument No. 80-004401, because the machine was not properly certified in accordance with Ohio Adm. Code 3701-53-04(C). We disagree.

{¶33} This case presents us with an issue of interpretation of a regulation adopted by O.D.H.  Ohio Adm. Code 3701-53-04(C) states in pertinent part:

Representatives of the director shall perform an instrument certification on approved evidential breath testing instruments * * * using a solution containing ethyl alcohol approved by the director of health according to the instrument display for the instrument being certified. **An instrument shall be certified no less frequently than once every calendar year or when the dry gas standard on the instrument is replaced, whichever comes first.** Instrument certifications are valid when the certification results are at or within five one-thousandths grams per two hundred ten liters of the target value for that approved solution. Instruments with certification results outside the range specified in this paragraph will require the instrument be removed from service until the instrument is serviced or repaired. Certification results shall be retained in a manner proscribed by the director of health. (Emphasis added).

The specific issue in this case is whether the Intoxilyzer 8000 was required to be certified within 365 days of the last certification, as appellant argues, or whether certification within calendar year 2012 was sufficient, as appellee contends.

{¶34} Precision in language is instructive in this context. A "year" means twelve consecutive months. R.C. 1.44(B). In *State ex rel. Gareau v. Stilllman*, the Ohio Supreme Court considered the meaning of the phrase "calendar year" as contained within the (former) R.C. 3213.191. 18 Ohio St.2d 63, 247 N.E.2d 461 (1969). The Court stated:

It is a fundamental principle of statutory construction that words in a statute should be construed in their ordinary and natural meaning, and be given the meaning ordinarily attributed to them unless a different intention appears in the statute. [Citation omitted]. The words "calendar year" are commonly and ordinarily accepted as meaning the period of time from January 1 through December 31. [Citations omitted]. * * * *. The only purpose of changing the general word "year," which means a period of 365 days and which is susceptible of different meanings so far as the time within the 365-day period should begin and end, to the specific words "calendar year" would be to adopt words which have a definite and common meaning as to the beginning and ending of the 365-day period which constitutes a year. As pointed out above, the words "calendar year" designate a period of time from January 1 through December 31. * * * *.

*State ex rel. Gareau v. Stilllman*, 18 Ohio St.2d at 64-65.

{¶35} We find, therefore, that the meaning of "calendar year" within Ohio Adm. Code refers to the period from January 1 through December 31. North Canton's Intoxilyzer 8000, Instrument No. 80-004401, was therefore properly certified in the "calendar year" 2011 (July 10, 2011) and the "calendar year" 2012 (August 28, 2012), and the trial court properly overruled the motion to suppress the Intoxilyzer result.

{¶36} We find this interpretation of "calendar year" to be consistent with Ohio's approach to time period in statutes and regulations. The general rule is that when a

statute or regulation uses a certain time period, whether hours, days, weeks, months, or years, counting is done only in terms of units of that time period and any act done during the duration of the last time period is timely. *State v. Bowman*, 108 Ohio App.3d 276, 278, 670 N.E.2d 554 (5th Dist.1996), citing *State v. Waugh*, 4th Dist. No. 90 CA 24, unreported, 1991 WL 110226 (June 17, 1991).

{¶37} Appellant's fourth assignment of error is overruled.

## CONCLUSION

{¶38} Having overruled appellant's four assignments of error, the judgment of the Canton Municipal Court is affirmed.

By: Delaney, J. and

Wise, P.J.

Baldwin, J., concur.

HON. PATRICIA A. DELANEY

HON. JOHN W. WISE

HON. CRAIG R. BALDWIN