[Cite as *State v. Gray*, 2024-Ohio-347.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023 CA 00022 |
| JAMAL H. GRAY | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:             Appeal from the Alliance Municipal Court,
                                     Case No. 2022 TRC 1482

JUDGMENT:                            Affirmed

DATE OF JUDGMENT ENTRY:              February 1, 2024

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

CAITLYN R. WEYER                           AARON KOVALCHIK
Alliance Law Director                      116 Cleveland Ave. N.W., Ste. 808
470 East Market Street                     Canton, OH 44702
Alliance, OH 44601

*Gwin, J.*

{¶1} Defendant-appellant Jamal Henry Gray ["Gray"] appeals his conviction after a jury trial in the Alliance Municipal Court, Stark County Ohio.

*Facts and Procedural History*

{¶2} Around 5:30 p.m. on July 10, 2022, Gray was driving his car on South Union Street. Patrolman Christian Tussey noticed that the vehicle had dark window tint. Patrolman Tussey activated his lights and sirens. Gray continued to drive, stopping for two stop signs along the way. T. at 70. Gray testified that he was unaware of the officer's siren because he had music playing and was attempting to get to his mother's home because she had just informed Gray that his grandfather had passed away. T. at 114. Gray stopped his car in front of his mother's home. Id. The encounter was recorded on Patrolman Tussey's point of view camera. T. at 67; State's Exhibit 1. As the officer approached, Gray rolled down the rear driver's side window because the front driver's side window was broken. T. at 76-78;115; State's Exhibit 1.

{¶3} Patrolman Tussey testified that he could smell a strong odor of burnt marijuana coming out of the vehicle. T. at 70. He further observed Gray throw a cup inside the car. Id. Fearing for his safety, Patrolman Tussey asked Gray to get out of his car. Id. Patrolman Tussey placed Gray in handcuffs at that time. Id.

{¶4} Gray informed the officer that he had a medical marijuana card.[1] Id. at 71. Patrolman Tussey further testified that after Gray was outside the car, he could detect the odor of burnt marijuana both on Gray's person and from the inside of Gray's car. T. at 79.

---

[1] R.C. 3796.22 mandates that qualifying individuals who obtain an Ohio Medical Marijuana Control program registry identification card will not be arrested or prosecuted for possessing or using medical marijuana, or for possessing any paraphernalia or accessories specified in rules adopted under section 3796.03 of the

{¶5} Patrolman Tussey used a tint meter and determined that Gray's driver's side window was too dark. T. at 72; 78. Patrolman Tussey observed no other traffic violations. T. at 81-83; 121-122. Gray did pass the Horizontal Gaze Nystagmus test administer by Patrolman Tussey. T. at 84. Without objection, Tussey testified that he then retrieved a "UV" pen light and used it to observe Gray's tongue, which, according to Tussey, exhibited markings consistent with recent marijuana smoking.[2] Patrolman Tussey also testified that Gray's eyes were red and semi-glossy. T. at 73; 78. Patrolman Tussey then searched Gray's car; however, he did not find either drugs or drug paraphernalia[3]. T. at 73; 80-81. Patrolman Tussey found a pack of cigars, which the officer characterized were commonly used for smoking marijuana. T. at 80-81. Patrolman Tussey testified that Gray admitted to smoking marijuana approximately thirty minutes prior to being stopped. T. at 74.

{¶6} Gray testified that he had removed his medical marijuana from his car earlier in the day prior to being stopped. T. at 117. Gray further testified that Patrolman Tussey asked him, "like when did you last smoke," to which Gray replied about thirty minutes ago; however, Gray was referring to smoking a cigar not smoking marijuana. T. at 118.

{¶7} Gray was placed under arrest for driving while under the influence of marijuana. Tussey then transported Gray to the police station, read him the Ohio BMV 2255 form regarding chemical tests, and asked him for a urine sample. T. at 75. Gray

---

Revised Code. The medical marijuana card was not produced for the patrolman or during Gray's jury trial. T. at 73; 82; 126-127.

[2] We note as an aside that Patrolman Tussey was not qualified as a Drug Recognition Expert ("DRE") nor does the record contain any scientific basis for the testimony that a UV light can detect marihuana residue in a suspect's mouth.

[3] See note 1.

submitted the sample. Patrolman Tussey testified that he placed the sample into a box, stored it temporarily in the refrigerator, then sent it to the Ohio State Patrol crime lab for testing. T. at 75-76.

{¶8}    Lindsey Mayfield, who is employed for the Ohio State Highway Patrol crime lab, testified regarding her testing of Gray's urine sample. Mayfield testified that the per se limit for marijuana metabolite in someone's urine according to the Ohio Revised Code is 35 nanograms per milliliter. T. at 97. Mayfield testified that the results she found in analyzing Gray's urine was that it contained a marijuana metabolite greater than 200 nanograms per milliliter. Id.

{¶9}    Gray was originally charged with OVI "under the influence" in violation of R.C. 4511.19(A)(1)(a). On September 22, 2022, trial counsel for Gray filed a Motion to Withdraw as counsel via fax. Counsel's motion was denied on the following day, because "no other counsel has filed a notice of appearance."

{¶10}   On November 16, 2022, the state filed an Amended Complaint alleging OVI "prohibited level" [urine] in violation of R.C. 4511.19(A)(1)(j).

{¶11}   The jury trial commenced on January 26, 2023 and concluded the same day. Prior to the start of Gray's jury trial, the trial court granted the state's motion and dismissed the OVI "under the influence" in violation of R.C. 4511.19(A)(1)(a). T. at 3.

{¶12}   The jury found Gray guilty of the charge of OVI, Prohibited Concentration of Controlled Substances or Metabolites (Urine) in violation of R.C.4511.19(A)(1)(j). The trial court found Gray guilty of a violation of tinted windows under Alliance City Ordinance 337.28 (A)(1). T. at 154. Gray was sentenced to six days jail or six days in the driver's

intervention program, a $775.00 fine; six points on his driver's license, a one-year driver's license suspension with limited privileges, and a $35.00 fine for the window tint.

*Assignments of Error*

{¶13} Gray raises two Assignments of Error,

{¶14} "I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL FAILED TO RAISE AND ARGUE A MOTION TO SUPPRESS THE RESULTS OF APPELLANT'S URINE TEST WHICH CAUSED PREJUDICE TO APPELLANT.

{¶15} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO INQUIRE FURTHER REGARDING TRIAL COUNSEL'S MOTION TO WITHDRAW."

I.

{¶16} In his First Assignment of Error, Gray contends that he was denied the effective assistance of counsel. Specifically, he argues that counsel was ineffective for failing to raise and argue that Patrolman Tussey did not have probable cause to arrest Gray for OVI and subsequently transport Gray to the police station and request a urine sample; nor did Patrolman Tussey have a reasonable, articulable suspicion of impairment that Gray was driving under the influence in order to prolong his stop for the tinted windows violation.

**Standard of Appellate Review**

{¶17} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding.

*Strickland v. Washington,* 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; State *v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

**{¶18}** Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. McFadden,* 5th Dist. Ashland No. 22-COA-012, 2023-Ohio-1630, *citing State v. Ortiz*, 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**Issue for Appellate Review**: *Whether there is a reasonable probability a motion to suppress would have been granted.*

**{¶19}** The Ohio Supreme Court has held,

> "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on

the driver's license, registration, and vehicle plates. *State v. Bolden,* Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, *citing* Delaware *v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], *citing State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and U.S. *v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12. In order to justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist. 1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey,* 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 23, *citing Village of Kirtland Hills v. Strogin,* 6th Dist. Lake App. No. 2005–L–073, 2006-Ohio-1450, ¶ 13 (internal citation omitted); *See also, State v. Matteucci*, 11th Dist. No. 2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

{¶20} In Ohio, it is well settled that, where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Wells*, 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008; *State v. Cooper,* 2nd Dist. Clark No. 2001-CA-86, 2002-Ohio-2778; *State v. Robinson*, 2nd Dist. Greene No. 2001-CA-118, 2002-Ohio-2933; *State v. Mapes*, 6th Dist. Fulton No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin*, 11th Dist. Lake No. 2005-L-073, 2006-Ohio-1450 ; *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶16, *New London v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611; *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-111, ¶22. We see no reason why the odor of burnt marijuana should not be subject to the same analysis as the odor of alcohol.

{¶21} In the case at bar, Patrolman Tussey testified that he could smell a strong odor of burnt marijuana emanating from the car as he spoke with Gray[4]. After removing Gray from the car, Patrolman Tussey testified he could smell the odor on Gray's person. In addition, Patrolman Tussey testified that his suspicion that Gray was under the influence was based upon Gray's slow response to the signal from Patrolman Tussey to stop; Gray's bloodshot and glassy eyes and Gray's turbulent behavior in throwing a cup inside his car in response to the officer's approach. Finally, Patrolman Tussey understood Gray's response to the question of when the last time Gray smoked to be in response to the smell of burnt marijuana. There was no testimony from Patrolman Tussey that the

---

[4] The smoking or combustion of medical marijuana is prohibited. R.C. 3796.06(B)(1).

patrolman smelled cigar smoke or that he was asking Gray about smoking cigars as opposed to marijuana. Further, as Gray admits, the evidence is devoid of any field sobriety tests other than the sole reference to Gray passing the HGN test.

{¶22} While there may be an innocent or non-impairment reason that a defendant's eyes are bloodshot and glassy, this "does not diminish the relevance of these factors for the question of whether the trooper reasonably suspected [the defendant] was intoxicated." *State v. Ashbury*, 12th Dist. Clinton No. CA 2021-02-003, 2021-Ohio-2788, ¶16 *quoting State v. Koogler*, 12th Dist. Preble No. CA2010-04-006, 2010-Ohio-5531, ¶16.

{¶23} Based upon the totality of the circumstances, we find Patrolman Tussey relied upon specific, articulable facts giving rise to a reasonable suspicion Gray was driving under the influence, and therefore an extension of the initial detention for the performance of field sobriety testing was justified.

{¶24} Probable cause to arrest for OVI need not arise solely from a suspect's field sobriety tests. *State v. Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952 (2000) *superseded by statute on other grounds as recognized in State v. Boczar, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155.* Probable cause to arrest exists when, at the moment of the arrest, "the facts and circumstances within [the arresting police officer's] knowledge * * * were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see, also, State v. Timson,* 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). The existence of probable cause is determined by examination of the "'totality' of facts and circumstances within an officer's knowledge." *State v. Miller*, 117 Ohio App.3d 750, 761,

691 N.E.2d 703 (1997). "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance." *Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952 *superseded by statute on other grounds as recognized in State v. Boczar, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155*.

{¶25} The case law agrees that probable cause to arrest may exist if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742 (1972); *Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333 (12th Dist. 1985); *State v. Bernard*, 20 Ohio App.3d 375, 376, 486 N.E.2d 866 (9th Dist. 1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241 (8th Dist. 1983); *State v. Judy*, 5th Dist. No. 2007-CAC-120069, 2008-Ohio-4520, 2008 WL 4118256, ¶27. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶15.

{¶26} Based on Patrolman Tussey's testimony as we have already set forth, we find that the totality of facts and circumstances supported a finding of probable cause to arrest Gray for driving under the influence.

{¶27} As there is not a reasonable probability that a motion to suppress the detention or the arrest of Gray would have been granted, trial counsel was not ineffective in failing to file a motion to suppress.

{¶28} Gray's First Assignment of Error is overruled.

II.

**{¶29}** In his Second Assignment of Error, Gray argues that the trial judge abused his discretion in failing to conduct an inquiry into trial counsel's motion to withdraw to determine whether there was a breakdown in the attorney-client relationship which would jeopardize Gray's right to effective assistance of counsel.

**Standard of Appellate Review**

**{¶30}** The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(1983); *State v. Blankenship* (1995), 102 Ohio App.3d 534, 657 N.E.2d 559(1995), " * * * [A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *State v. Green*, 5th Dist. Stark. No. 1996CA00058, 1996 WL 488804(August 19, 1996), *citing State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499(1984).

**{¶31}** Because a trial court's decision on substitution of trial counsel is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion. *Martel v. Clark,* 565 U.S. 648, 663-664, 132 S.Ct. 1276, 182 L.Ed.2d 135(2012). *Accord, State v. Williams*, 99 Ohio St.3d 493, 513, 794 N.E.2d 27, 2003-Ohio-4396, *citing United States v. Iles,* 906 F.2d 1122,1130–1131, fn. 8 (6th Cir. 1990); *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶70.

**{¶32}** An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or

where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for Appellate Review**: *Whether the trial judge's decision denying defense counsel's motion to withdraw was clearly untenable, legally incorrect, amounted to a denial of justice, or reaches an end or purpose not justified by reason and the evidence.*

**{¶33}** On September 23, 2022, Gray's attorney filed a motion to withdraw. [Docket Entry No. 16]. The motion read,

> Now comes Counsel for Defendant Jamal Gray who respectfully moves this Honorable Court to grant this Motion to Withdraw as Counsel in the above-captioned case. Defendant has informed Counsel that he seeks to end Counsel's representation and hire new counsel. A final pre-trial hearing in this case is scheduled for November 14, 2022 AM, and a jury trial scheduled for November 17, 2022 at 8:30 AM.
>
> WHEREFORE, Counsel for Defendant respectfully moves to withdraw as Counsel.

**{¶34}** By Order filed September 23, 2022, the trial judge denied the Motion "as no counsel has filed a notice of appearance." [Docket Entry No. 17].

**{¶35}** The need for an inquiry by the trial judge into the circumstances surrounding a request to discharge appointed counsel and appoint substitute counsel will not be recognized where the defendant has not evidenced his dissatisfaction or wish to remove his appointed counsel. *United States v. Iles,* 906 F.2d 1122, 1131 (6th Cir. 1990).

**{¶36}** Neither Gray nor counsel requested the trial judge remove appointed counsel and appoint new counsel. Neither Gray nor counsel expressed in the motion that a conflict of interest existed, a complete breakdown in communication had occurred, or that there was an irreconcilable conflict between counsel and Gray. In the case at bar, neither Gray nor his attorney ever expressed to the trial judge that Gray was dissatisfied with his appointed counsel; rather the trial judge was told that Gray was going to hire private counsel.

**{¶37}** Gray has failed to show the trial judge's decision overruling his trial counsel's motion to withdraw was clearly untenable, legally incorrect, amounted to a denial of justice, or reaches an end or purpose not justified by reason and the evidence. Accordingly, Gray's Second Assignment of Error is overruled.

**{¶38}** The judgment of the Alliance Municipal Court, Stark County, Ohio is affirmed.

By Gwin, J.,

Delaney, P.J., and

King, J., concur