[Cite as *State v. Anglin*, 2020-Ohio-2907.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CA 00034 |
| RICHARD ANGLIN | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Fairfield County
                                                              Municipal Court, Case No. TRC1811704

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT ENTRY:          May 12, 2020

APPEARANCES:

For Plaintiff-Appellee                            For Defendant-Appellant

JOSEPH SABO                                    BRADLEY NICODEMUS
Lancaster Law Director's Office             1409 West Market Street
136 West Main Street                           Baltimore, OH 43105
Box 1008
Lancaster, OH 43130

*Gwin, P.J.*

{¶1} Defendant-appellant Richard Anglin ["Anglin"] appeals his conviction and sentence after a jury trial in the Fairfield County Municipal Court.

*Facts and Procedural History[1]*

{¶2} On November 18, 2018, at approximately 1:00 a.m., Officer Richard Daily with the Pickerington Police Department was traveling northbound on State Route 256 when he performed a random registration check on a gray Honda Civic. ST. at 8[2]. Upon being notified that the registered owner of the vehicle was under suspension, Officer Daily proceeded to turn his cruiser around to locate the vehicle, which had already turned onto Stonecreek Drive South. Officer Daily pulled into an access drive off Stonecreek Drive, where he then found the Honda Civic sitting in the roadway behind a commercial establishment. As the vehicle pulled out of the parking lot onto Stonecreek, Officer Daily noticed the vehicle failed to use a left turn signal. ST. at 10. The encounter was recorded on Officer Daily's cruiser camera. State's Exhibit A[3]; ST. at 10. Officer Daily approached the driver's side of the car and confirmed that Anglin did not have driving privileges. ST. at 11. In addition, Officer Daily detected the odor of an alcoholic beverage coming from the driver-side window. ST. at 11. Officer Daily observed a female in the front passenger seat. ST. at 12. Anglin denied consuming any alcohol,

---

[1] Because four of the five Assignments of Error raised by Anglin are based upon the trial court's failure to grant his Motion to Suppress, we shall set forth the facts that the trial court had before it when it decided Anglin's Motion to Suppress.

[2] For clarity sake, the Transcript of the Hearing on Anglin's Motion to Suppress will be referred to as by volume and page number as "ST." and the Transcript of the jury trial will be referred to by volume and page number as "JT."

[3] State's Exhibit A consists of two disks. The first disk contains footage of the traffic stop; the second disk contains footage of the breath test conducted by Officer Daily upon Anglin.

but, when checking Anglin's eyes while he was still inside his vehicle, Officer Daily noted that Anglin was unable to follow a stimulus with only his eyes.

{¶3} Officer Daily first performed portions of the HGN on Anglin while Anglin was still seated in his vehicle, and with various flashing and strobing lights nearby. Anglin was then removed from his vehicle, the cruiser's strobe lights were tuned off, and the HGN was again performed on Anglin while he was sitting on the police cruiser bumper. Anglin informed Officer Daily that he had "blown out his knee." ST. at 25. Therefore, Anglin claimed that he was unable to perform the Walk-and Turn test ["WAT"] of the One-Legged-Stand test ["OLS"].

{¶4} Officer Daily admitted that he had not observed any erratic driving. ST. at 48-49. Anglin's speech was normal and not slurred. ST. at 49. The officer observed no fumbling, swaying, red, bloodshot eyes, or lack of coordination by Anglin. ST. 57. Officer Daily's decision to require Anglin to perform the field sobriety tests was based solely upon the odor of alcohol and the fact that Officer Daily was advised that Anglin's driving suspension was based upon a previous OVI. ST. at 16. Officer Daily's decision to arrest Anglin for OVI was based upon Anglin's refusal to perform the WAT and OLS tests, and the six clues he received from the HGN test. ST. at 26.

{¶5} Anglin was transported to the Pickerington Police Department. While preparing Anglin for the BAC test, Officer Daily inadvertently pushed the "refusal" button on the breathalyzer causing the machine to abort. Officer Daily admits he threw that breath test ticket away. Officer Daily had Anglin resume his seat at an adjacent table while Officer Daily began preparing the machine for a new breath testing procedure. The second breath test ticket reported a breath-alcohol concentration of .177. Anglin

was then charged with operating a vehicle while impaired with a prohibited concentration of breath-alcohol, R.C. 4511.19(A)(1)(h), and a turn signal violation, R.C. 4511.39.

{¶6} Prior to the beginning of trial, the state sought to prevent cross-examination of Officer Daily regarding certain matters, specifically the administration of the HGN test, and the trial court agreed. JT. at 28-31. The trial court prohibited any questions as to whether Officer Daily performed the HGN test in substantial compliance with NHTSA standards, as the trial court had already overruled Anglin's Motion to Suppress. JT. at 58-62.

{¶7} The jury found Anglin guilty of OVI, under R.C. 4511.19(A)(1)(h), and the trial court found Anglin guilty of a turn signal violation, under R.C. 4511.39. JT. at 135-136. The trial court imposed a sentence of 180 days in jail, 120 days suspended, 20 days of actual incarceration, and the remainder of the days to be suspended pending future review hearings.

*Assignments of Error.*

{¶8} Anglin raises five Assignments of Error,

{¶9} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT A TURN SIGNAL IS REQUIRED WHEN EXITING A PRIVATE DRIVEWAY ONTO A PUBLIC ROADWAY AND THAT THE FAILURE TO SIGNAL SUCH A TURN WAS SUFFICIENT PROBABLE CAUSE TO EFFECTUATE A TRAFFIC STOP.

{¶10} "II. THE TRIAL COURT ERRED WHEN IT FOUND THE OFFICER HAD PERFORMED THE HGN TEST IN SUBSTANTIAL COMPLIANCE WITH NHTSA GUIDELINES AND THE OFFICER'S TRAINING.

{¶11} "III. THE TRIAL COURT ERRED IN DETERMINING THERE WAS PROBABLE CAUSE TO ARREST MR. ANGLIN FOR OPERATING A MOTOR VEHICLE WHILE IMPAIRED.

{¶12} "IV. THE TRIAL COURT ERRED WHEN IT DETERMINED THE OFFICER COMPLIED WITH THE APPLICABLE RECORDING KEEPING AND TESTING REGULATIONS DESPITE THE OFFICER ADMITTING AN EVIDENTIARY BREATH TEST TICKET WAS DESTROYED.

{¶13} "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED MR. ANGLIN THE RIGHT TO PURSUE HIS DEFENSE BY PROHIBITING CROSS-EXAMINATION OF AN OFFICER WITH REGARDS TO ERRORS THE OFFICER MADE DURING HIS DETENTION AND ARREST OF MR. ANGLIN."

{¶14} Anglin's first four Assignments of Error concern the trial court's overruling his motion to suppress.

**STANDARD OF APPELLATE REVIEW.**

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111

Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶16} It is with this Standard of Review in mind that we shall address Anglin's Assignment of Error I through Assignment of Error IV.

I.

{¶17} In his First Assignment of Error, Anglin contends Officer Daily made a traffic stop for a turn signal violation where no violation of the law occurred and his subjective interpretation of the law cannot validate an illegal traffic stop.

**ISSUE FOR APPEAL.**

*Did Officer Daily have a reasonable articulable suspicion sufficient to warrant Officer Daily in stopping the car that Anglin was driving?*

{¶18} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of

the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

{¶19} In *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays,* the Ohio Supreme Court made the following observation as it pertains to Ohio law,

Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and on *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, *but we have not held that probable cause is required.* Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 (emphasis added). The Ohio Supreme Court concluded,

Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by *a reasonable and articulable suspicion* considering all the circumstances, then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added).

{¶20} At the hearing on Anglin's Motion to Suppress, Officer Daily testified,

Q. What was it that first drew your attention to the defendant?

A. Did a random registration check, was notified through my MDT that the registered was driving under suspension.

Q. And was there anything obstructing your view of the defendant's vehicle?

A. No,

Q. And where did you perform this registration check?

A. It was approximately at Stonecreek and 256, He was going northbound as well on 256.

ST. at 9. In *Kanas v. Glover, a* Kansas deputy sheriff ran a license plate check on a pickup truck, discovering that the truck belonged to respondent Glover and that Glover's driver's license had been revoked. 140 S.Ct. 1183, 2020 WL 1668283 (Apr 6, 2020). The deputy pulled the truck over because he assumed that Glover was driving. Glover was in fact driving and was charged with driving as a habitual violator. Id. at syllabus. Glover moved to suppress all evidence from the stop, claiming that the deputy lacked reasonable suspicion. The District Court granted the motion, but the Court of Appeals reversed. The Kansas Supreme Court in turn reversed, holding that the deputy violated the Fourth Amendment by stopping Glover without reasonable suspicion of criminal activity. The United States Supreme Court granted Kansas' petition for a writ of certiorari, 587 U. S. ——, 139 S.Ct. 1445, 203 L.Ed.2d 680 (2019), and reversed the decision of the Kanas Supreme Court, holding,

When the officer lacks information negating an inference that the owner is driving the vehicle, an investigative traffic stop made after running a vehicle's license plate and learning that the registered owner's driver's license has been revoked is reasonable under the Fourth Amendment.

*Glover,* 140 S.Ct. 1183, 2020 WL 1668283(Apr 6, 2020) at 1187 – 1191. The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23.

{¶21} A review of Officer Daily's dashcam video reveals dispatch informing Officer Daily that Anglin is under a suspension with driving privileges before Officer Daily stops Anglin's vehicle. State's Exhibit A at 1:15. Officer Daily asks Anglin for his driving privilege papers. Id. Officer Daily informs Anglin that he does not have privileges to pick someone up and Anglin agrees. State's Exhibit A at 1:18. The stop was initiated at 1:17 a.m. ST. at 7.

{¶22} Based upon the facts presented to the trial court during the evidentiary hearing on Anglin's Motion to Suppress, the stop of Anglin's vehicle was constitutionally valid because Officer Daily ran the vehicle's license plate and learned that the registered owner's driver's license was under suspension. Officer Daily was justified in stopping Anglin's vehicle to determine if Anglin was driving in violation of his driving privileges based upon the hour and location of the stop.

{¶23} "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Peeples v. Anderson* 73 Ohio St.3d 559, 560, 653 N.E.2d 371, 373(1995); *State ex rel. Cassels v. Dayton City School Dist. Bd. Of Edn.*, 69 Ohio St.3d 217, 222, 631 N.E.2d 150(1998). *Accord, State ex rel. v. McGinty v. Cleveland City School Dist. Bd. Of Edn.*, 81 Ohio 283, 290, 1998-Ohio-471, 690 N.E.2d 1273(1998).

{¶24} Daily's First Assignment of Error is overruled.

II.

{¶25} In his Second Assignment of Error, Anglin argues that Officer Daily's performance of the first HGN field sobriety test was not done in substantial compliance with the standardized testing procedures; therefore the trial court erred in failing to suppress the results of the test.

**ISSUE FOR APPEAL.**

*Did Officer Daily perform the HGN test on Anglin in substantial compliance with the NHTSA standards?*

{¶26} Anglin's arguments center exclusively upon Officer Daily's first performance of the HGN test. [Appellant's Brief at 17-19]. Officer Daily was outside the car and Anglin was seated inside the car. The cruiser's overhead lights were on at the time the first test was performed. However, Officer Daily then removed Anglin from his car and again performed the HGN test. ST. at 59. Officer Daily can be seen turning off all of the lights on his cruiser before administering the second HGN test. State's Exhibit A at 1:21.

{¶27} Officer Daily observed six clues on the second HGN test. Anglin points to no specific part of the second HGN test that was not in substantial compliance with the regulations. [Appellant's Brief at 20]. A review of the dashcam video reveals that, after giving the necessary instructions and confirming that Anglin understood those instructions, Officer Daily positioned his pen twelve to fifteen inches in front of the Defendant's nose, slightly above eye level. *See also*, ST. at 19-20. Officer Daily then checked Anglin eyes for equal tracking, lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees.

ST. at 20-24. Each portion of the HGN test was done in accordance with the NHTSA manual; however, it took Officer Daily approximately one hundred seconds to administer the test due to Anglin's moving his head, coughing and losing track of the stimulus at various times, requiring Officer Daily to instruct Anglin to hold his head still with his hands. ST. at 25; State's Exhibit A at 1:24. See also, *State v. Loininaek*, 5th Dist. Stark No. 2012CA00213, 2013-Ohio-2678, ¶ 31 (timing requirements to complete the various elements of the HGN Test as set forth in the NHTSA Manual are approximate; therefore, strict compliance is not required).

{¶28} The trial court correctly found that the second HGN test was done in substantial compliance with the testing regulations.

{¶29} Anglin's Second Assignment of Error is overruled.

III.

{¶30} In his Third Assignment of Error, Anglin contends that with no indicia of impairment and improperly administered HGN test; the trial court should not have determined there was probable cause to arrest Anglin. [Appellant's Brief at 22].

**ISSUE FOR APPEAL.**

*Did Officer Daily have probable cause to arrest Anglin for OVI?*

{¶31} The Ohio Supreme Court has held,

"[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No.

CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12. In order to justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No.2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

{¶32} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, 2015 WL 5096900, ¶18, *quoting State v. Anez*, 108 Ohio Misc.2d 18, 26–27, 738 N.E.2d 491 (2000). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer

therefore need only have reasonable suspicion that the driver is under the influence of alcohol (or another drug) in order to conduct a field sobriety test. *See State v. Bright*, 5th Dist. Guernsey No. 2009–CA–28, 2010-Ohio-1111, ¶ 17, *citing State v. Knox*, 2nd Dist. Greene No. 2005–CA–74, 2006-Ohio-3039. Under a "totality of the circumstances" approach, we look at the entirety of the events leading to the officer's decision to conduct field sobriety tests. *See, e.g., State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, *citing State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶33} "Reasonable suspicion is "* * * something more than an inchoate or un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist.1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 23, *citing Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005–L–073, 2006-Ohio-1450, ¶ 13 (internal citation omitted).

{¶34} In analyzing similar cases, we have accepted the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order

to conduct a field sobriety test. *State v. Knox*, 2nd Dist. Greene App. No. 2005–CA–74, 2006–Ohio–3039. *See also, State v. Bright*, 5th Dist. Guernsey App. No. 2009–CA–28, 2010–Ohio–1111.

{¶35} We have found in our discussion of Anglin's Second Assignment of Error that the HGN test was properly conducted in the case at bar.

{¶36} In Ohio, it is well settled that, where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Wells*, 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008; *State v. Cooper*, 2nd Dist. Clark No.2001-CA-86, 2002-Ohio-2778; *State v. Robinson*, 2nd Dist. Greene No.2001-CA-118, 2002-Ohio-2933; *State v. Mapes*, 6th Dist. Fulton No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin,* 11th Dist. Lake No. 2005-L-073, 2006-Ohio-1450 *; State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶16, *New London v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611; *State v. Bright,* 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-111, ¶22.

{¶37} In the case at bar, Officer Daily's probable cause to arrest Anglin for OVI included the hour and location of the stop. The fact that Anglin was driving on a suspended license and in violation of his driving privileges. His admission to having consumed alcohol earlier in the day, after first denying having had any alcohol. A review of the dashcam video reveals that Anglin's passenger was too intoxicated to drive the car. State's Exhibit A at 1:25. She candidly admitted that she was over the legal limit. Id. When asked to perform the WAT and OLS tests, Anglin told Officer

Daily that he could not put his feet together or put one foot in front of the other. State's Exhibit A at 1:24. Officer Daily told Anglin the reason for his arrest is the clues received on the HGN test and the fact that Anglin was not able to perform the other Field Sobriety Tests. At one point, Deputy Daily asks Anglin if he would agree to a breath test and Anglin agrees. State's Exhibit A at 1:25.

{¶38} Based on the totality of facts and circumstances surrounding this traffic stop, the trial court was correct in finding probable cause to place Anglin under arrest for OVI.

{¶39} Anglin's Third Assignment of Error is overruled.

IV.

{¶40} In his Fourth Assignment of Error, Anglin argues that since Officer Daily and the Pickerington Police Department have failed to comply with OAC 3701-53-01, the trial court should have suppressed the results of Anglin's evidentiary breath test. [Appellant's Brief at 23-24]. Anglin argues that Officer Daily failed to comply with the Ohio Department of Health (hereinafter "ODH") regulations for administering evidentiary breath tests because he discarded the first breath test ticket that was printed by the BAC Datamaster machine.

{¶41} Ohio Admin. Code, 3701-53-02 Breath Tests provides, in relevant part,

(E) Breath samples using the instrument listed under paragraph (A)(3) of this rule shall be analyzed according to the instrument display for the instrument being used. The results of subject tests shall be retained in a manner prescribed by the director of health and shall be

retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code.

Ohio Admin. Code 3701-53-01 provides in relevant part,

(A) Tests to determine the concentration of alcohol may be applied to blood, breath, urine, or other bodily substances. Results shall be expressed as equivalent to:

(1) Grams by weight of alcohol per one hundred milliliters of whole blood, blood serum or plasma (grams per cent by weight);

(2) Grams by weight of alcohol per two hundred ten liters of deep lung breath;

(3) Grams by weight of alcohol per one hundred milliliters of urine (grams per cent by weight).

(4) Nanograms by weight of a controlled substances or a metabolite or a controlled substance per milliliter of blood, urine, or other bodily substance.

*The results of the tests shall be retained for not less than three years.*

Emphasis added. Anglin argues that Officer Daily testified that he gave Anglin two evidentiary breath tests because there was some error on the first test. He also testified that we do not know what the error was because he did not retain the evidentiary breath ticket that machine produced. Anglin submits that Officer Daily's testimony clearly establishes that he did not retain the test records and therefore has not complied with OAC 3701-53-01 to retain test results for at least three years. [Appellant's Brief at 23].

{¶42} The Supreme Court of Ohio has held that rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer,* 22 Ohio St.3d 292, 294, 490 N.E.2d 902 (1986). *See, also, State v. Morton,* 12th Dist. Warren No. CA98–10–131, 1999 WL 296700 (May 10, 1999). Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under R.C. 4511.19. In *State v. Burnside*, 100 Ohio St.3d 152,159, 2003–Ohio–5372, 797 N.E.2d 71, the Ohio Supreme Court limited the substantial-compliance standard set forth in *Plummer* to "excusing only errors that are clearly de minimis." The Court continued: "Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as 'minor procedural deviations.' " Id., *citing State v. Homan*, 89 Ohio St.3d 421, 426, 732 N.E.2d 952 (2000), *superseded by statute as stated in State v. Schmitt,* 101 Ohio St.3d 79, 2004–Ohio–37, 801 N.E.2d 446.

**ISSUE FOR APPEAL.**

*Was Officer Daily's administration of the Breath Test conducted in substantial compliance with the regulations?  Was Anglin prejudiced by the conduct of the Breath Test in his case?*

{¶43} Officer Daily's administration of the Breath Test to Anglin was recorded and played as State's Exhibit A. The footage corroborates Officer Daily's testimony.

{¶44} During the suppression hearing, Officer Daily testified that he did not keep the first breath test ticket printed by the BAC Datamaster machine because he accidentally entered that Anglin was refusing a breath test. ST. at 70. Video from the BAC room shows that Anglin was never instructed by law enforcement to place his mouth on the mouthpiece

or to start blowing prior to the first test ticket being printed. In addition, there was no tone emitted from the machine, indicating that Anglin was to start blowing into the mouthpiece. The footage further reveals that prior to instructing Anglin to blow into the machine on the first attempt, Officer Daily can be seen standing at the machine with Anglin. The machine emits a loud tone and aborts the testing procedure. Officer Daily informs the other officer in the room that he pushed the wrong button. Officer Daily instructs Anglin to have a seat at an adjacent table. Officer Daily then begins the initiation sequence for a new breath test. When ready, Officer Daily calls Anglin over to the machine. Officer Daily instructs Anglin as to how and when to blow into the machine. When told to begin blowing into the machine, Anglin leans forward and down and begins to blow into the machine.

{¶45} Anglin did not lean forward and down, nor did he place the mouthpiece into his mouth at any time during the first attempt at the breath test. Officer Daily discarded the first ticket because it incorrectly indicated that Anglin had refused to take a breath test, when, in actuality, Anglin had indicated his willingness to submit to a chemical test. Under the facts of the case at bar, we find this to be a de minimis deviation from the regulation requiring that the "results" of a breath test be maintained for three years. We further find under the facts of the case at bar, Anglin's arguments concerning contamination of the mouthpiece in between the time of the first and the second test to go to the weight, not the admissibility of the breath test. Anglin has failed in his burden to demonstrate that he has been prejudiced by the admission into evidence of the BAC test in the case at bar.

{¶46} Anglin's Fourth Assignment of Error is overruled.

V.

{¶47} In his Fifth Assignment of Error, Anglin argues that during his jury trial the State sought confirmation that officer Daily was in substantial compliance with the procedures for the administration of the HGN test. Anglin, therefore, wished to ask questions regarding its administration — but not necessarily introduce the NHTSA manual — so the jury could hear how HGN is supposed to be administered and how Officer Daily actually administered it.  The trial court overruled Anglin's request and attempts to elicit testimony on this subject.

**STANDARD OF APPELLATE REVIEW.**

{¶48} The Sixth Amendment of the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  *Davis v. Alaska*, (1974), 415 U.S. 308, 353. [Hereinafter referred to as "*Davis*"]. That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings under *Pointer v. Texas*, (1965), 380 U.S. 400, includes the right to conduct reasonable cross-examination.  *Davis*, 415 U.S. at 315-316.

{¶49} Reasonable cross-examination includes not only the opportunity to impeach a witness: "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness". *Davis*, 415 U.S. at 316, but also the exposure of a witness' motivation in testifying:  'A more particular attack on the witness' credibility is

effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence Section 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [415 U.S. 317]". *Greene v. McElroy*, (1959), 360 U.S. 474, 496, 3 L.Ed. 2d 1377, 79 S.Ct. 1400. *See also*, *Davis*, 415 U.S. at 316-317. *Olden v. Kentucky*, (1988), 488 U.S. 227, 109 S.Ct. 48. [Hereinafter referred to as "*Olden*"]; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 678-679. [Hereinafter referred to as "*Van Arsdall*"].

{¶50} In *Van Arsdall*, the Court stated: "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. *Harrington,* 395 U.S., at 254, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Schneble v. Florida*, 405 U.S. at 432, 31 L.Ed. 2d 340, 92 S.Ct. 1056."

**ISSUE FOR APPEAL.**

*Did the trial court properly limit Anglin from cross-examining Officer Daily during trial concerning his administration of the HGN test and the proper standards for administration of the HGN test?*

{¶51} Anglin submits that his questions were designed to demonstrate that an officer with little experience made a series of mistakes, which when compounded upon each other, led to an improper HGN test, an improper arrest, an invalid breath test, and therefore he was not guilty of the crime charged. [Appellant's Brief at 26-27].

{¶52} Anglin was charged and found guilty of a "per se" violation under R.C. 4511.19(A)(1)(d).   In prosecutions for "under the influence" pursuant to R.C. 4511.19 (A)(1)(a), "the behavior of the defendant * * * is the crucial issue.  However, in *State v. Lucas*, the Supreme Court observed,

> The *per se* offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others."  *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR 1, 5, 472 N.E.2d 689, 693.  In determining whether one of these *per se* offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level.  The critical issue at trial is the accuracy of the test, not the behavior of the accused.  See Katz & Sweeney, Ohio's New Drunk

Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34

Case W.Res.L.Rev. 239, 243.

40 Ohio St.3d 100, 103, 532 N.E.2d 130 (1988). The SFST's are not determinative to a finding of whether 1). Anglin was operating a vehicle within this state and 2). Whether at the time he had a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath. In other words, the SFST's are not necessary to the determination of guilt or innocence for a "per se "offense.

{¶53} Therefore, even if we were to assume arguendo that the trial court erred in limiting the cross-examination of Officer Daily at trial, we would nonetheless find that any error was harmless beyond a reasonable doubt. In the case at bar, we find beyond a reasonable doubt, that the evidence of Officer Daily's administration of the SFST's to Anglin did not contribute to his conviction of an OVI as a "per se" violation under R.C. 4511.19(A)(1)(d).

{¶54} Anglin's Fifth Assignment of Error is overruled.

{¶55}  The judgment of the Fairfield County Municipal Court is affirmed.


By Gwin, P.J.,

Wise, John, J. and

Delaney, J., concur